[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13037
Non-Argument Calendar
_____

D. C. Docket No. 04-00006-CR-1-MMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY WIMS,
a.k.a. Timothy Derrinado Davis,
a.k.a. John Darren Delgado,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 21, 2007)**

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Timothy Wims appeals his 360-month sentence for conspiracy to manufacture, distribute, and possess with the intent to manufacture and distribute more than 5 kilograms of cocaine and more than 50 kilograms of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(A)(iii), and 846.[1] On appeal, Wims argues that his sentence was unreasonable because he had renounced criminal activity, was not the leader of the conspiracy, and had cooperated with the government. For the reasons set forth more fully below, we affirm Wims's sentence.

## I. Background

The instant case arose out of an investigation of Cleveland Ferguson, Jr., a drug dealer in Gainesville, Florida. Wims and Ferguson previously had been involved in the sale of cocaine in the Gainesville area. In 1991, Wims was convicted of cocaine distribution and sentenced to 120 months' imprisonment. Wims was released from custody in 1995, but his supervised release was revoked in 1996 because he committed a home invasion. Wims was subsequently released from custody in 2002. Following that release from prison, Wims contacted

---

[1]Wims was also charged with (1) attempting to use physical force against another person with the intent to influence, delay, and prevent the person from testifying in an official proceeding before a court of the United States, in violation of 18 U.S.C. § 1512(a)(2)(A), (a)(3)(B)(ii); and (2) threatening and attempting to cause bodily injury to another person with the intent of retaliating against that person for giving information to a police officer relating to the commission of a federal offense, in violation of 18 U.S.C. § 1513(b)(2). However, those charges were later dismissed upon the government's motion.

Ferguson regarding his desire to sell drugs again. Ferguson provided money to Wims, with which Wims bought cocaine in Miami and transport it back to Ferguson in Gainesville. Wims also purchased cocaine for himself during these transactions and converted it into cocaine base for further distribution.

In September 2003, Wims was involved in a drug transaction with his half-brother. During that transaction, Wims's half-brother shot Wims twice in the back of the head and left him to die. Wims survived and, according to his girlfriend, Wims thereafter attempted to reestablish himself as a drug dealer in Virginia. Wims made approximately four trips from Miami to Virginia to buy and sell cocaine. Wims was later arrested in Virginia. During the time between Wims's arrest and sentencing, Wims made several threats to cooperating defendants and witnesses against him. Wims also ran after and threatened a witness against him while they were both imprisoned in Tallahassee, Florida.

At sentencing, Wims's counsel requested that, if the court was going to stay within the guideline range, the court sentence Wims to 360 months' imprisonment because Wims was not the leader of the conspiracy. Wims's counsel further stated that Wims had stopped engaging in criminal activity the day that he was shot by his half-brother. The government responded that Wims continued to sell drugs after he had been shot. Wims then stated on his own behalf that he "didn't

3

immediately involve [himself] back in a drug gang after [he] got shot on September 13, 2003, but eventually [he] couldn't get no assistance."

After hearing the arguments from the parties, the court stated that Wims had engaged in a life of crime and every time he was released from custody he returned to crime and drugs. The court also found that Wims had "a very long, long, long criminal record." The court then determined that Wims's guideline range was 360 months' to life imprisonment, and sentenced Wims to 360 months' imprisonment.[2] The court noted that it was the low-end of the guideline range and that, even though the court was not bound by the guidelines, the range was appropriate in Wims's case.

## II. Discussion

On appeal, Wims argues that his 360-month sentence was unreasonable in light of the facts and circumstances of his case, and that the court should have sentenced him below the advisory guideline range. Wims maintains that his sentence should have been below the guideline range because he: (1) renounced criminal activity after he was shot and long before he was arrested for the instant offense; (2) was not the leader of the conspiracy; and (3) cooperated with law

---

[2]The district court calculated Wims's guideline range based upon his adjusted offense level of 38 and his criminal history category of VI. Wims does not challenge the court's guideline calculation on appeal.

4

enforcement even though he did not qualify for a U.S.S.G. § 5K1.1 reduction.

Ordinarily, we review final sentences for reasonableness. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). We do not reach the merits of Wims's arguments, however, because we conclude that Wims induced or invited the ruling he now claims was error. We have held that "a party may not challenge as error a ruling or other trial proceeding invited by that party." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (quotation omitted). "Where invited error exists, it precludes a court from invoking the plain error rule and reversing." Id. (quotation omitted).

At sentencing, Wims's counsel explicitly requested that, if the court intended to sentence Wims within the guideline range, the court should sentence him to 360 months' imprisonment. Even though Wims's counsel prefaced his request by stating "if the court is inclined to follow" the guideline range, Wims's counsel never explicitly requested that the court impose a below-guideline sentence, nor did counsel direct the court to another term of imprisonment that would be appropriate in Wims's case. As such, Wims's counsel invited the court to sentence Wims to 360 months' imprisonment, which sentence the court imposed. Thus, Wims is precluded from claiming that his sentence was unreasonable. See Love, 449 F.3d at 1157. Accordingly, Wims's 360-month

5

sentence is

**AFFIRMED.**[3]

---

[3]Were we to review this sentence for reasonableness we would have no difficulty in affirming based upon the instant criminal activity, the extensive criminal record of Wims, the thorough review made by the sentencing judge and his consideration of the legal precedents controlling sentencing.